UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| GLADYS RESTO, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | Civil Action No. 15-30012-MGM |
| CAROLYN W. COLVIN, | * | |
| Acting Commissioner of Social Security, | * | |
| | * | |
| Defendant. | * | |

MEMORANDUM AND ORDER REGARDING PLAINTIFF'S
MOTION FOR JUDGMENT ON THE PLEADINGS AND DEFENDANT'S
MOTION FOR ORDER AFFIRMING COMMISSIONER
(Dkt. Nos. 13 and 15)

April 7, 2016

MASTROIANNI, U.S.D.J.

## I.    INTRODUCTION

This is an action for judicial review of a final decision by Carolyn Colvin, the acting

Commissioner of the Social Security Administration ("Commissioner"), regarding an individual's

entitlement to Supplemental Security Income ("SSI") pursuant to 42 U.S.C. § 1383(c)(3) (referring to

42 U.S.C. § 405(g)). Gladys Resto ("Plaintiff") asserts the Commissioner's decision denying her such

SSI—memorialized in a November 22, 2013 decision of an administrative law judge ("ALJ")—is in

error. The parties have filed cross-motions for judgment on the pleadings.

At issue is whether the ALJ erred by failing to adopt the findings of several mental health

medical sources when assessing Plaintiff's residual functional capacity ("RFC"). In response, the

Commissioner contends that substantial evidence in the record supports the ALJ's findings. For the

reasons set forth below, the court allows the Commissioner's motion and denies Plaintiff's motion.

The parties are familiar with the facts and lengthy procedural history[1] of this case, so the court begins its discussion with the standard of review.

## II.     STANDARD OF REVIEW

The role of a district court reviewing an administrative law judge's decision is limited to determining whether the conclusion was supported by substantial evidence and based on the correct legal standard. *See* 42 U.S.C. §§ 405(g) and 1983(c)(3); *Manso-Pizarro v. Sec'y of Health & Human Servs.,* 76 F.3d 15, 16 (1st Cir. 1996). The Supreme Court has defined substantial evidence as "more than a mere scintilla." *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB,* 305 U.S. 197, 229 (1938)). Even if the administrative record could support multiple conclusions, a court must uphold the Commissioner's findings "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion." *Irlanda Ortiz v. Sec'y of Health & Human Servs.,* 955 F.2d 765, 769 (1st Cir. 1991) (quoting *Rodriguez v. Sec'y of Health & Human Servs.,* 647 F. 2d 218, 222 (1st Cir. 1981)). Additionally, it is the Commissioner's responsibility to weigh conflicting evidence and decide issues of credibility. *Rodriguez,* 647 F.2d at 222.

## III.     DISABILITY STANDARD AND THE ALJ'S DECISION

Entitlement to SSI requires a showing of both disability and financial need on or after the date of the SSI application. *See* 42 U.S.C. § 1381a. Plaintiff's financial need is not challenged. Therefore, whether Plaintiff has a disability within the meaning of Section 1614(a)(3)(A) of the

---

[1] On August 14, 2009, Plaintiff's initial request for SSI was denied. (Administrative Record ("A.R.") at 51-53.) Thereafter, on January 13, 2010, Plaintiff's request for reconsideration was also denied. (*Id.* at 57-59.) After a hearing on May 3, 2011 before the ALJ, Plaintiff was found not disabled. (*Id.* at 39-46.) Plaintiff then filed a subsequent SSI application on July 6, 2011 that was also denied initially and on reconsideration. (*Id.* at 751, 767.) On September 16, 2011, the Appeals Council denied review of the ALJ's first determination. (*Id.* at 1-3.) On June 18, 2012, this court reversed the decision and remanded. (*Id.* at 724-30.) The Appeals Council consolidated both of Plaintiff's SSI claims and directed the ALJ to take testimony and issue a new decision. (*Id.* at 730.) Thereafter, a second hearing before the ALJ took place on August 1, 2013. (*Id.* at 677-93.) That decision was again appealed, and the Appeals Council declined review on November 25, 2014. (*Id.* at 666-69.) The instant action followed.

Social Security Act, 42 U.S.C. § 1382c(a)(3)(A) (the "Act") to qualify for SSI is the only issue at hand.

The Act defines disability, in part, as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). An individual is considered disabled under the Act:

> only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B). *See generally Bowen v. Yuckert,* 482 U.S. 137, 146-49 (1987).

In determining disability, the Commissioner follows the five-step protocol described by the First Circuit as follows:

> 1) If the applicant is engaged in substantial gainful work activity, the application is denied; 2) if the applicant does not have, or has not had within the relevant time period, a severe impairment or combination of impairments, the application is denied; 3) if the impairment meets the conditions for one of the "listed" impairments in the Social Security regulations, then the application is granted; 4) if the applicant's "residual functional capacity" is such that he or she can still perform past relevant work, then the application is denied; 5) if the applicant, given his or her residual functional capacity, education, work experience, and age, is unable to do any other work, the application is granted.

*Seavey v. Barnhart,* 276 F.3d 1, 5 (1st Cir. 2001); *see also* 20 C.F.R. § 416.920(a)(4).

In the instant case, the ALJ found as follows with respect to these steps. First, Plaintiff has not engaged in substantial gainful activity since April 27, 2009. (Administrative Record ("A.R.") at 41, 685.) Second, the ALJ found Plaintiff to have severe impairments that included chronic back

pain and major depression.[2] (*Id.*) Third, the ALJ determined Plaintiff's impairments did not, singly or in combination, meet or medically equal the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 41, 686.) Fourth, the ALJ found Plaintiff had the RFC to perform light work, as defined in 20 C.F.R. § 416.967(b), but with the following limitations:

> She is limited to unskilled work which allows for only occasional contact with co-workers and the general public. She can only occasionally climb ramps and stairs, or balance, kneel, crouch, crawl and stop. She cannot perform work involving more than incidental exposure to extremes of temperature, vibration, respiratory irritants or humidity. She requires a "sit-stand option" and cannot use right foot or leg controls. She cannot lift or reach overhead. Lastly, she cannot work around heights or climb ladders, ropes and scaffolding.

(*Id.* at 42, 687.) In connection with this RFC determination, the ALJ found Plaintiff had no past relevant work to be considered under 20 C.F.R. § 416.965; therefore, transferability of job skills under 20 C.F.R. § 416.968 was not an issue. (*Id.* at 44, 691.) At the fifth and final step, the ALJ determined that Plaintiff could engage in other work, including occupations such as an assembler, inspector, or packer, which are jobs that exist in significant numbers in the national economy. (*Id.* at 692.) As a result, the ALJ determined Plaintiff was not disabled. (*Id.* at 692-93.)

## IV.   DISCUSSION

Plaintiff argues the ALJ failed to adequately consider the opinions from several mental health medical sources when assessing her RFC.[3]  The Commissioner contends that substantial evidence in the record supports the ALJ's findings. Viewing the record as a whole, the court agrees with the Commissioner.

An administrative law judge must give "controlling weight" to the medical opinion of a "treating source" if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. 20 C.F.R. §

---

[2] The ALJ found Plaintiff's mild asthma, hypertension, and complaints of fatigue, knee pain, and left shoulder pain did not significantly impact her functioning. (A.R. at 685-86.)
[3] Plaintiff does not contend the ALJ failed to consider evidence regarding any physical impairments.

416.927(c)(2). When an administrative law judge does not accord a treating source's medical opinion controlling weight, he or she must consider the length, frequency, nature, and extent of the treatment relationship, the opinion's supportability and consistency with the record as a whole, and any other relevant factors to determine the weight the opinion deserves. 20 C.F.R. § 416.927(c)(2)-(6). The administrative law judge must also give "good reasons" for the weight ultimately given to such an opinion. *Id.*

On the other hand, opinions from "other medical sources" are not entitled to controlling weight and an administrative law judge is not required to provide "good reasons" for the weight assigned to such opinions nor consult the factors in 20 C.F.R. § 416.927(c)(2)-(6). *Taylor v. Astrue,* 899 F. Supp. 2d 83, 88 (D. Mass. 2012). An administrative law judge still must adequately explain the treatment of an opinion by "other medical sources" so that a reviewer can determine if the decision is supported by substantial evidence. *Id.* at 88-89. Further, an administrative law judge cannot ignore entirely the opinion of a non-acceptable medical source. *Doucette v. Astrue,* 972 F. Supp. 2d 154, 168 (D. Mass. 2013).

Plaintiff argues the ALJ failed to adequately consider the treating source opinion of Gina Hughes, R.N.M.S. Ms. Hughes's position as a nurse is not among the "acceptable medical sources" listed in 20 C.F.R. § 416.913(a). *See Taylor,* 899 F. Supp. 2d at 88. Rather, nurses are "other medical sources" that an administrative law judge has discretion to assign weight to as appropriate. *Id.*

Ms. Hughes completed two psychiatric disorder questionnaires of Plaintiff on May 18, 2009 and November 11, 2009. (A.R. at 251-53, 285-87.) Both reports are nearly identical and note Plaintiff's major depressive disorder symptoms with a Global Assessment Functioning ("GAF") score of 50.[4] (*Id.*) The ALJ found these reports to be:

---

[4] A GAF score is a number between 1 and 100 that measures "the clinician's judgment of the individual's overall level of functioning." Diagnostic and Statistical Manual of Mental Disorders, Fourth Ed., Text

> inconsistent with the longitudinal mental health history (showing intermittent therapy, effectiveness of treatment when compliant, no psychiatric hospitalizations) and the claimant's reported activities, including caring for her special needs child, managing her household and traveling in 2011 to Puerto Rico. She has had no reported difficulty engaging well with others.

(*Id.* at 690.) The ALJ also noted that these findings were inconsistent with those found later by Plaintiff's therapist, Cheryl Friss, M.Ed. (*Id.*)

Substantial evidence in the record supports the ALJ's treatment of Ms. Hughes's opinion. The questionnaires filled out by Ms. Hughes are some of the earliest medical evidence in the record. In comparison to the more recent evidence, they directly conflict with later medical reports from 2011 through 2013 that show improvement in Plaintiff's mental conditions following treatment. Further, the court finds that, under *Taylor*, the ALJ adequately explained the treatment of Ms. Hughes's opinion. The ALJ outlined Ms. Hughes's findings in the decision. (*Id.* at 688.) Then, the ALJ refuted these findings with adequate explanation; most notably, that they were inconsistent with Plaintiff's longitudinal mental health history and her reported daily activities. (*Id.* at 690.)

Plaintiff further argues the ALJ failed to adequately consider the treating source opinion of Ms. Friss; specifically, her opinion that Plaintiff's prognosis was "poor" and that "[d]ue to both medical and psychological issues, [Plaintiff] probably could not keep employment." (*Id.* at 1083.) Ms. Friss is a therapist and therefore her opinion is also that of an "other medical source." *See* 20 C.F.R. § 416.913(d); *Rivera v. Colvin,* No. 15-cv-30002-KAR, 2016 WL 778360, at *14 (D. Mass. Feb. 26, 2016) (therapist is not an "acceptable medical source" and an administrative law judge is granted wide discretion in weighting a therapist's opinion). "When deciding how much weight to give a therapist's opinion, an [administrative law judge] is only constrained by the duty to reach a conclusion supported by substantial evidence in the record." *Nadeau v. Colvin,* No. 14-cv-10160-FDS,

---

Revision, 32 (2000). A score between 51 and 60 denotes "moderate" symptoms or limitations. *Id.* at 34. A score between 41 and 50 denotes "serious" symptoms or limitations. *Id.*

2015 WL 1308916, at *8 (D. Mass. Mar. 24, 2015) (quoting *Gagnon v. Astrue,* No. 11-cv-10481-PBS,

2012 WL 1065837, at *5 (D. Mass. Mar. 27, 2012)).

Ms. Friss met with Plaintiff on many occasions from 2009 through 2013.[5] Initially, on April

21, 2009, Ms. Friss diagnosed Plaintiff with major depressive disorder and a GAF score of 50. (A.R.

at 238.) Thereafter, Plaintiff's GAF score climbed to 55 in 2009, 56 in 2012, and 57 in 2013. (*Id.* at

284, 1157, 1145.) According to the most recent evidence in the record, Ms. Friss noted that

Plaintiff's depression, anxiety, and daily stressors were decreasing while her coping skills were

increasing. (*Id.* at 1145, 1150.)

The ALJ explained extensively why Ms. Friss's opinion was afforded little weight. (*Id.* at

690.) In particular, the ALJ stated that her opinion "is out of proportion with the claimant's

longitudinal history, her daily activities, her ability to maintain a long-term, supportive relationship

with her boyfriend, and her assessed GAF of 55." (*Id.*) The ALJ also found that the treatment notes

did not support Ms. Friss's opinion that the Plaintiff had "recurrent suicidal ideation, inability to

remember and concentrate, inability to focus and complete tasks, and 'possible cognitive deficits.'"

(*Id.*). Rather, the ALJ pointed out:

> The claimant reported she went to school through the 11th grade. She has been
> capable of caring for herself and her children. The claimant has stressors related to the
> care of her special needs child, and she has not worked for many years because she
> has been caring for her son. She repeatedly has applied for social security benefits
> while receiving minimal to moderate care for her allegedly disabling physical and
> mental impairments. Ms. Friss' opinion that the claimant "probably could not keep
> employment" is not persuasive evidence of incapacitating depression. Moreover, no
> other treating or examining physician has suggested that the claimant has any physical
> or mental impairment that prevents her from working.

(*Id.*) The court finds substantial evidence in the record to support the ALJ's conclusion regarding

Ms. Friss's opinion. The explanation by the ALJ for granting Ms. Friss's opinion little weight, as

---

[5] On January 18, 2010, Plaintiff was discharged for missing an appointment and failing to return calls to
reschedule. (A.R. at 363.) Plaintiff began treatment again with Ms. Friss on March 16, 2011. (*Id.* at 420.)

outlined above, is satisfactory under *Taylor*. *See Lopez v. Colvin,* No. 14-cv-30173-MGM, 2016 WL 659682, at *6 (D. Mass. Feb. 18, 2016) (finding the administrative law judge adequately explained why he granted little weight to a therapist's opinion because she was not an "acceptable medical source" and her findings were inconsistent with those of other acceptable sources).

Lastly, Plaintiff argues that Alan Stone, Ph.D. is an "acceptable medical source" and the ALJ erred by not adequately considering his opinion. Indeed, Dr. Stone is an acceptable medical source. The ALJ would have had to consider his opinion, but Dr. Stone did not give any opinion about Plaintiff throughout the record. Dr. Stone's involvement is limited to signing off on reports completed by Ms. Hughes and Ms. Friss, and there is no evidence he conducted an examination of or otherwise treated Plaintiff. These sign-offs do not morph Ms. Hughes or Ms. Friss into acceptable medical sources; neither do they change such reports into treating source opinions by Dr. Stone. *See Allen v. Colvin,* No. 13-cv-781-L, 2015 WL 906000, at *11 (D.R.I. Mar. 3, 2015) ("It is well-settled that neither the physician's sign-off on each encounter that the patient had with the physician's assistant nor the physician's sign-off on the physician assistant's opinion morphs the assistant into an acceptable medical source."); *Lobov v. Colvin,* No. 12-cv-40168-TSH, 2014 WL 3386567, at *14 n.8 (D. Mass. June 23, 2014) (co-signature of acceptable medical source on the opinion from other source had no bearing on the administrative law judge's discretion to assign weight to the other source opinion); *Coppola v. Colvin,* No. 12-cv-492-JL, 2014 WL 677138, at *9 (D.N.H. Feb. 21, 2014) (signature of acceptable medical source on opinion completed by non-acceptable medical source did not establish it as a treating source opinion when evident the acceptable medical source had no ongoing treatment relationship). Further, even if these co-signed evaluations had in fact been treating source opinions, substantial evidence supports the ALJ's decision to give them little weight due to being out of proportion with Plaintiff's longitudinal history and daily activities.

The court notes Plaintiff's medical records were reviewed by two different Disability Determination Services evaluators on separate occasions. (A.R. at 743-49, 759-65.) Plaintiff's records were reviewed by Celeste N. Derecho, Ph.D. on October 18, 2011. (*Id.* at 743.) Dr. Derecho completed a mental RFC assessment that noted some symptoms, but found none to be severe. (*Id.* at 746-48.) Likewise, on January 12, 2012, Jon Perlman, Ed.D. conducted a similar assessment of Plaintiff's records. (*Id.* at 759.) Dr. Perlman found no severe limitations. (*Id.* at 759-65.) These opinions add to the substantial evidence supporting the ALJ's disability determination.

This court must uphold the ALJ's determination if it was supported by substantial evidence, even if the available evidence could have supported other determinations, and even if a different administrative law judge may have reached a different conclusion when reviewing the record. *See Bird v. Colvin,* No. 14-cv-30108-MGM, 2015 WL 5315196, at *7 (D. Mass. Sept. 11, 2015). Substantial evidence supports the conclusion reached by the ALJ in this case.

## V.   CONCLUSION

For these reasons, the court DENIES Plaintiff's Motion for Judgment on the Pleadings (Dkt. No. 13) and ALLOWS Defendant's Motion for Order Affirming Decision of the Commissioner (Dkt. No. 15). The clerk shall enter judgment for Defendant, and this case may now be closed.

It is So Ordered.

  /s/ Mark G. Mastroianni
MARK G. MASTROIANNI
United States District Judge